UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEL EDDY COLEGROVE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN HOSHINO, et al.,<br><br>　　　　　Defendants. | Case No.  13-cv-00096-BLF<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Re: ECF 1] |

Petitioner Del Eddy Colegrove brings this Petition for Writ of Habeas Corpus, alleging that he was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Pet., ECF 1 at 10. Petitioner was charged with various sexual offenses committed against his stepdaughter between 2006 and 2008. Petitioner alleges that his trial counsel provided him inadequate assistance during plea bargaining, causing Petitioner to reject a plea bargain under which he would have received a maximum term of imprisonment of fifteen years. *See* Pet. at 10-11. After trial, the jury ultimately convicted Petitioner on thirty counts, and he was sentenced to 64 years in prison.

Petitioner argues that he is entitled to habeas relief because his counsel did not know, and did not adequately inform him, of his maximum exposure were he to be convicted by a jury at trial. He alleges that, at the time he was offered a 15-year plea bargain, he was in fact facing between 48 years and 59 years and 4 months in prison were he to be convicted, an amount which increased to 188 years and 2 months by the time of trial. Pet. at 11. Petitioner contends that:

> Had I known that I could have received a sentence of 188 years 2 months, . . . or even 48 years, I would have accepted the offer of plea agreement and would not have proceeded to trial. But my trial counsel never informed me of the maximum sentence that I was facing at any point in the case.

1  *Id*. The government opposes, contending, among other things, that Petitioner did not present
2  sufficient evidence before the state court to show that his trial counsel's performance had been
3  constitutionally deficient.
4      For the reasons given below, the Court DENIES the Petition.

**I.    BACKGROUND**

    **A.    Petitioner's Conviction and Subsequent Procedural History**

Pursuant to a First Amended Information, *see* Pet. Exh. A at 257-89, Petitioner was charged with 46 sexual offenses against M., his stepdaughter.

On July 25, 2009, following a jury trial, Petitioner was convicted on 30 counts: seven counts of forcible oral copulation (Penal Code § 288a(c)(2)) and three counts of forcible penetration by a foreign object (Penal Code § 289(a)(1)), related to acts committed between June 1 and December 31, 2007; six counts of forcible rape (Penal Code § 261(a)(2)) and eight counts of oral copulation of a person under age 18 (Penal Code § 228a(b)(1)), related to acts committed between July 1, 2006 and August 25, 2008; and six counts of unlawful sexual intercourse with a minor more than three years younger than Defendant (Penal Code § 261.5(c)), related to an incident "on or around August 12, 2008." *See* Pet. Exh. A. at 257-89; *see also* Pet. Exh. I at 2.

Following trial, the People filed a sentencing recommendation asking Petitioner be sentenced to 128 years in prison, "an aggravated term of 8 years for each of his separate forcible sex acts against the minor victim." Pet. Exh. A at 387. The Probation Department also recommended a 128-year sentence. Pet. Exh. A at 403-05. Defense counsel argued in a sentencing statement that a 128-year sentence would be illegal, because the jury did not make any factual findings regarding aggravating factors or statutory sentencing enhancements, which the defense contended under *Cunningham v. California*, 549 U.S. 270 (2007), prevented the court from imposing full, separate, and consecutive sentences for each forcible sex act. *See* Pet. Exh. A at 439-45.

On November 13, 2009, Petitioner was sentenced to "a total term in prison of 64 years: eight years for the forcible foreign object penetration in count 4 (the principal term) and consecutive terms of eight years each for the forcible penetration by a foreign object in count 6

1  and the six rapes in counts 7 through 12. On the other counts, the Court imposed concurrent
2  sentences or stayed sentences." Pet. Exh. I at 2-3 (a summary of the procedural history of the case
3  provided by the California Court of Appeal, Sixth District). At sentencing, Petitioner's counsel
4  renewed her contention that *Cunningham* prevented the imposition of the sentence sought by the
5  government, *see* Pet. Exh. B at 2518-23, and argued that the imposition of consecutive terms,
6  "[w]hether it's 64 years or 128 years" amounted to a life sentence for her client. *Id.* at 2526. Prior
7  to being sentenced, Petitioner was given the opportunity to speak, during which he stated "I'd also
8  like to thank you, my lawyer, Kristine Burk for doing a great job representing me through this as
9  well." *Id.* at 2527.

Following his sentencing, Petitioner filed a timely notice of appeal on January 5, 2010, *see*
Pet. Exh. F at 3, and filed for state habeas relief through an amended petition for habeas corpus on
February 4, 2011, alleging various violations of his right to effective assistance of counsel. Pet.
Exh. F. On October 28, 2011, the Court of Appeal for the Sixth District affirmed the judgment
against Plaintiff in its entirety, and summarily denied Petitioner's request for state habeas relief in
a one-sentence order.

On December 7, 2011, Petitioner filed a petition for writ of habeas corpus with the
California Supreme Court, which summarily denied the Petition in a one-sentence order on April
11, 2012. Pursuant to 28 U.S.C. § 2254, Petitioner timely filed for federal habeas relief on January
8, 2013.

### B.    Facts Related to Petitioner's Claim for Ineffective Assistance of Counsel

In his petition for writ of habeas corpus before the California Court of Appeal, Petitioner
alleged various grounds for his claim of ineffective assistance of counsel. *See* Pet. Exh. F.
Petitioner reasserts only one of these grounds in this instant Petition, arguing that his attorney,
Kristine Burk, failed to advise him of the maximum penalty he was facing were he to go to trial,
and that this failure caused him to decline a plea bargain that would have resulted in a maximum
sentence of fifteen years imprisonment.

With his state petition, Petitioner included a declaration in which he stated:

> Ms. Burk did not explain to me that I could be sentenced to 64 years

> in state prison if I was convicted of the charges upon which I was found guilty. She did not explain to me the maximum possible sentence I faced if I was convicted on all charged counts. She did not explain to me the concept of "stacking" and how "stacking" could result in a longer prison sentence for me. In fact, I understood from what Ms. Burk told me that a 16 year sentence was likely but that a 24 year sentence was possible if I went to trial and was convicted. She said I should go to trial for that reason and because [M.'s] testimony was not strong.
>
> . . .
>
> Before trial, the prosecutor offered me a plea deal by which I would plea[d] guilty to certain charges in exchange for a recommendation of a 15 year prison sentence and two strikes. Had my attorney explained to me how "stacking" worked and how I faced a prison term of more than 100 years if I had been convicted I would have accepted the prosecutor's plea offer and foregone the trial.

Colegrove Decl., Pet. Exh. F at 40.

Petitioner did not include with his state petition a declaration from his trial attorney, Ms. Burk, regarding her performance, nor did he include any other declarations to corroborate his own statements. Instead, Petitioner's appellate counsel included with the state Petition a prior declaration filed by Ms. Burk in relation to a motion for a continuance of the trial. Petitioner contends that this declaration shows that his trial counsel was unaware of his maximum exposure and therefore could not have adequately counseled Petitioner regarding the risks he was facing going to trial rather than accepting the plea bargain.

In the Burk Declaration, filed several weeks before trial was scheduled to begin, Ms. Burk stated that "the undersigned needs additional time to prepare to adequately defend Mr. Colegrove, who is facing a twenty-six (26) count felony Information for which his maximum exposure is approximately 70 years in prison." Burk Decl., Pet. Exh. A at 168. On the date this declaration was filed, July 3, 2009,[1] Petitioner contends that he was actually facing a twenty-nine count Information, and that his maximum exposure was 122 years, not 70 years. *See* Traverse, ECF 18 at 11. Petitioner therefore makes two arguments regarding the Burk declaration. First, he contends that Burk's incorrect calculation of the sentence he was facing at trial amounts to clear evidence

---

[1] The declaration is dated "this 3rd day of July, 2008," but was filed concurrently with a motion dated July 3, 2009, and the misdating looks to be a scrivener's error. *See* Exh. A at 164 (motion dated July 3, 2009).

4

that his counsel failed to inform him of his maximum exposure, and therefore that it was error for the state court to reject his ineffective assistance of counsel claim. *See id.* at 16. Second, he contends that her statement in the motion to continue "can be reconciled with only one assumption, namely that [counsel had made] a fundamental error of law" with regard to how sentences for his forcible charges could be imposed. *See id.* at 23-24.

Petitioner presented only three pieces of evidence with his state habeas petition: his own two-page declaration, a sealed copy of the Burk Declaration, and letters presented in support of Petitioner at his sentencing hearing. *See* Declaration of David A. Linn, Pet. Exh. F. at 42 ¶¶ 2-3.

On January 8, 2014, Petitioner filed in this Court a motion to expand the record to include new evidence not presented to the state court. ECF 19. Following briefing, the Court determined that Petitioner had failed to meet his burden under 28 U.S.C. § 2254 to diligently present said evidence to the state court, and denied Petitioner's motion on September 5, 2014. *See* ECF 33 at 3-6.[2]

## II.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2254 *et seq.*, prohibits a district court from granting a petition challenging a state conviction that was decided on the merits by a state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of § 2254(d)(1), a state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court

---

[2] Many of the arguments in Petitioner's Traverse cite to the three declarations which Petitioner sought to include in an expanded record. *See* Traverse, ECF 18. Having denied Petitioner's motion to expand the record, the Court does not consider this evidence. *See, e.g.*, *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Similarly, a state court decision is an "unreasonable application of" Supreme Court authority if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The only definitive source of clearly established federal law under AEDPA is the holdings—as opposed to the dicta—of the Supreme Court as of the time of the state court's decision. *See Williams*, 529 U.S. 362, 412; *see also Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) ("The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States, that governs the habeas petitioner's claims.'"). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 (1997), and prohibits a federal court from "substituting its own judgment for that of the state court," *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (per curiam) (finding habeas relief improper when the state court decision was "merely erroneous").

In general, "[w]hen there is no reasoned opinion from the highest state court to consider petitioner's claims, the court looks to the last reasoned opinion." *Sieu Phong Ngo v. Curry*, 745 F. Supp. 2d 1031, 1033 (N.D. Cal. 2010) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991)). However, where the lower state court decisions consist of summary denials, or decisions on the merits of a petitioner's claim without any reasoning provided, the Court's task is different. In such a circumstance, as the Court is presented with here, a court "must review the complete record to determine whether habeas relief was properly granted [or denied]." *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002). As the Supreme Court outlines in *Harrington v. Richter*:

> [D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no reasonable basis* for the state court to deny relief.

131 S. Ct. 770, 784 (2011) (emphasis added).

In deciding whether no reasonable basis existed for the state court's decision, the district

1  court "must determine what arguments or theories could have supported the state court's decision;
2  and then it must ask whether it is possible fairminded jurists could disagree that those arguments
3  or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Cullen v.*
4  *Pinholster*, 131 S. Ct. 1388, 1402 (2011) (internal quotations and punctuation omitted); *see also*
5  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("If this standard is difficult to meet—and it
6  is—that is because it was meant to be.").

### III. DISCUSSION

Petitioner argues that his trial counsel gave him ineffective assistance during the plea bargaining process. He contends that his trial counsel failed to inform him of his maximum exposure were he to be convicted at trial, and, in addition, that his trial counsel did not even know what his maximum exposure was, thus preventing her from providing him effective assistance in encouraging him to reject a 15-year plea offer. He also contends that, were he provided effective assistance of counsel, he would have accepted the 15-year plea.

Petitioner states in his Traverse[3] that his counsel "committed a fundamental error of law in calculating [his] maximum exposure." Traverse at 11. He argues that counsel's incorrect belief that he was facing a maximum of 70, rather than 122, years was due to her erroneous assumption that the counts of forcible sex acts with which Petitioner was charged "would be treated as part of a single transaction or occurrence and that, therefore, concurrent sentences would be imposed for the forcible acts that occurred in each incident." *Id.*

Petitioner argues that his counsel failed to inform him of an exception to the general California sentencing scheme under Penal Code section 654, which states that a defendant cannot be convicted of multiple crimes arising from the same transaction or occurrence. *See* Traverse at 13. Petitioner contends that Ms. Burk did not inform him that, when a defendant is convicted of certain sex offenses under Penal Code section 667.6(d) involving the same victim on separate

---

[3] Petitioner makes a number of factual claims in his Traverse that were not before the California courts in his state habeas action, and given the Court's denial of his motion to expand the record, the Court limits a description of his argument to those factual issues that were presented to the state courts.

occasions, a "full, separate and consecutive term shall be imposed for each violation." *Id.* This failure to inform Petitioner of the possibility that certain of his sentences could "stack," Petitioner alleges, means that Ms. Burk failed to inform him of his maximum exposure – what Petitioner terms his "worst case scenario" – and thus provided him ineffective assistance. *Id.* at 14. Relying on the recent Supreme Court case *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), Petitioner contends that the state court unreasonably rejected his ineffective assistance of counsel claim.[4]

The government makes several arguments in response to Petitioner's claims. First and foremost, the government contends that Petitioner produced "no reliable evidence even that the prosecution proposed a plea bargain" in the first instance. Answer to Pet. at 12. Second, it argues that the state reasonably rejected Petitioner's claims, for several reasons: (1) the Supreme Court's holding in *Lafler* is clearly distinguishable from the factual circumstances in this case, because in *Lafler* the state had conceded that trial counsel performed incompetently; (2) Petitioner failed to support his factual assertions made in his own declaration with sufficient corroborating evidence; and (3) the record suggests that Petitioner's own factual claims are untrue. *See* Answer at 12-13.

The Court's job is to determine whether or not the state court's rejection of this Petitioner's ineffective assistance of counsel claim constituted an unreasonable application of clearly established federal law. Specifically, the Court examines closely the evidence on which Plaintiff heavily relies – the Burk Declaration seeking a trial continuance – and, for the reasons offered below, finds that the state court could have reasonably inferred from the Burk Declaration, filed prior to the start of trial, that counsel had informed Defendant that he was facing approximately a seventy year sentence were he convicted at trial. Not only does this single misstatement of Plaintiff's possible sentence fail to show that the state court erred in finding that counsel's performance was not deficient, but Petitioner further fails to show that, even if this performance was deficient, that he suffered prejudice because of his counsel's performance.

---

[4] The Supreme Court decided *Lafler* on March 21, 2012. The California Supreme Court denied Colegrove's petition on April 11, 2012, twenty-one days later. As such, the California Supreme Court was bound by *Lafler* for purposes of deciding Petitioner's state claim. *See, e.g.*, *Williams*, 529 U.S. 362, 412 (stating that state courts are bound by the holdings of the Supreme Court at the time the final state decision on the merits was rendered).

**A.     Law Governing the Effective Assistance of Counsel**

The Sixth Amendment right to effective assistance of counsel, afforded all criminal defendants, is "a right that extends to the plea bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *see also McMann v. Richardson*, 397 U.S. 759, 771 (1970) (finding that a defendant is "entitled to the effective assistance of competent counsel" during plea negotiations). The right to effective assistance of counsel extends to the plea bargaining process not only when a defendant accepts a guilty plea, but also when a defendant rejects a plea offer and elects to go to trial. *See Lafler*, 132 S. Ct. 1376, 1386 ("Even if the [subsequent] trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.").

The Supreme Court, in *Strickland v. Washington*, articulated a two-prong test to determine whether or not an attorney's performance was ineffective. Under the "performance" prong of *Strickland*, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." 474 U.S. 668, 688 (1984). Under *Strickland's* "prejudice" prong, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The defendant bears the burden of proof with regard to both of these prongs. *See id.*

In *Strickland*, the Supreme Court "made clear that the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants received a fair trial." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (citing *Strickland*, 466 U.S. 668, 689). Consistent with this view, the Supreme Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690 ("The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges.").

Further, as the Supreme Court has recently stated, "[w]hen a state prisoner asks a federal

court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *see also Cullen*, 131 S. Ct. 1388, 1403 ("[The Court] take[s] a highly deferential look at counsel's performance . . . through the deferential lens of § 2254(d).") (citing *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1413 (2009)).

An ineffective assistance of counsel claim brought with regard to advice proffered by counsel during plea bargaining, and which is before the federal court without the state courts below providing any reasoning, thus requires the Court to engage in a very specific form of analysis. This Court must examine the entirety of the record before the California Supreme Court, in light of the law at the time the California Supreme Court rendered its decision, to determine what arguments could have supported its denial of habeas corpus relief. *See, e.g.*, *Cullen* at 1402. If *any* reasonable basis existed for the state court's decision, habeas relief must be denied. *See id.* at 1403-04 (denying relief because petitioner "has not shown that the California Supreme Court's decision . . . necessarily involved an unreasonable application of federal law"). In this analysis, the Court considers only the evidence before the state court at the time it rendered its decision. *See Titlow*, 134 S. Ct. 10, 15.

### B.     Applying *Strickland*

Petitioner does not contend that his counsel failed to adequately present the facts of the plea offer – rather that his counsel failed to give him adequate advice regarding the consequences of rejecting the plea offer. *See Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (holding that counsel has an obligation to accurately present the terms of a plea offer to defendant, such that defendant can knowingly accept or reject the plea offer). Given this, the Court considers only whether the record before the California Supreme Court makes the California Supreme Court's determination—that Ms. Burk was not ineffective—unreasonable.

In *Lafler*, on which Petitioner heavily relies, the performance prong of *Strickland* was not at issue: the parties both agreed that counsel had performed deficiently when he advised the defendant to reject a plea offer because counsel believed defendant would not be convicted of

10

murder at trial. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384. According to the Supreme Court, Mr. Lafler "rejected [a plea offer of a sentence of 51 to 85 months in prison] on both occasions [it was presented], allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." *Id.* at 1383. Beyond stating that this advice was concededly deficient, however, the Supreme Court did not set forth any analytical framework under which lower courts were to evaluate the sufficiency of a trial counsel's performance, stating: "Here, [] the fact of deficient performance has been conceded by all parties. The case comes to us on that assumption, so there is no need to address" exactly what type of performance would be required to find counsel to be constitutionally ineffective. *Id.* at 1391. The *Lafler* Court did note, however, that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.*

Petitioner attempts to argue that his case is indistinguishable from the facts in *Lafler*, and as such the state court's denial of his petition was unreasonable. His argument is unpersuasive. First, there is no allegation that Ms. Burk provided Petitioner with any deficient advice regarding the elements that the prosecutor would or would not be able to prove. Petitioner's declaration before the California Supreme Court stated only that Petitioner believed that his counsel had told him that a 16 year sentence was "likely" but that a 24 year sentence was "possible" if he went to trial and was convicted. Petitioner then went on to say that Ms. Burk "said I should go to trial for that reason *and because [M.'s] testimony was not strong*." Colegrove Decl. ¶ 5, Pet. Exh. F at 40 (emphasis added). This language could reasonably have been read by the California Supreme Court as an ultimately erroneous strategic prediction, rather than, as Petitioner contends, a fundamental error of law. Recognizing the strong presumption that counsel has performed adequately, *see, e.g.*, *Cullen*, 131 S. Ct. 1388, 1403, the state court could reasonably have determined that Petitioner's counsel had offered him strategic advice as to the likely sentence he was facing, given her opinion of the strength of testimony by the stepdaughter, the government's lead witness. Petitioner failed to produce *any* evidence before the state court that his counsel incorrectly informed him of what the prosecutor would have needed to prove at trial, as was the case in *Lafler*.

11

The only other argument that Petitioner advances, and he does so repeatedly, is that his counsel's performance was deficient because she failed to inform him of his maximum exposure because she herself did not know his maximum possible sentence. *See, e.g.*, Traverse at 11-12.

Petitioner states in his declaration that his counsel "did not explain to me that I could be sentenced to 64 years in state prison if I was convicted," and that she "did not explain the concept of 'stacking' and how 'stacking' could result in a longer prison sentence for me." Colegrove Decl. ¶ 4. Petitioner does not state in this declaration when he developed his belief that he was facing between 16 and 24 years if convicted, or what his counsel said to create such a belief. Nor did he produce a declaration from his counsel corroborating his belief. Instead, his declaration reads only to say that, prior to trial, Petitioner was not told that he was facing 64 years in prison if convicted, and that his trial attorney did not explain to him what stacking was or how it could affect his sentence. Petitioner does state, however, that "Had I known that I could have received a sentence of . . . 64 years, or 59 years 4 months or even 48 years, I would have accepted the offer of plea agreement and would not have proceeded to trial." Pet., ECF 1 at 11.

In evaluating post-conviction claims made by prisoners with regard to their counsel's performance, California courts require a petitioner to provide *some* corroborating evidence in support of his claims. This principle is articulated most clearly in *In re Alvernaz*, 2 Cal. 4th 924 (1992), in which the California Supreme Court held that a petitioner's own declaration was "self-serving and thus insufficient *in and of itself*" to establish petitioner's claims. *Id.* at 945 (emphasis added). *In re Alvernaz* dealt with a petitioner's claim that he would have accepted a plea bargain had he been adequately informed by his counsel of the sentence he faced at trial. The court found that petitioner's statements that he would have accepted the plea bargain were "insufficiently corroborated by independent, objective evidence." *Id.*

Here, Petitioner cited no admissible evidence beyond his declaration for his contention that his trial counsel failed to inform him of the sentence he was facing at trial. It was not unreasonable for the California Supreme Court to have rejected Petitioner's contention as self-serving when he provided no further evidence apart from his own brief declaration. *See In re Alvernaz*, 2 Cal. 4th 924, 944-46; *see also Nunes v. Mueller*, 350 F.3d 1045, 1053 (9th Cir. 2003) (holding that a

12

California court did not rule "contrary to clearly established Supreme Court law" when it followed *In re Alvernaz*, because *In re Alvernaz* "sets forth the same requirements as *Strickland* for demonstrating an ineffective assistance claim in the context of plea bargaining"). California's rule falls squarely within the goals of AEDPA and *Strickland* in providing substantial deference to counsel when a claim for ineffective assistance of counsel is brought after trial – to do otherwise would encourage a proliferation of habeas claims for relief that rely on self-serving and otherwise unsupported declarations by the prisoners themselves. *See, e.g.*, *Strickland*, 466 U.S. at 690.

The evidence Petitioner does cite in order to buttress his ineffectiveness claim – the Burk Declaration – in fact provides further support to the reasonableness of the state court's ruling. Ms. Burk states in that declaration that Petitioner was facing a "maximum exposure of approximately 70 years in prison" were he convicted. Burk Decl. ¶ 4, Pet. Exh. A at 168. A state court reviewing this statement, standing alone and filed in the context of a motion to continue trial, and not, instead, in papers directly related to sentencing, could readily have rejected Petitioner's claim that this was proof his counsel did not know what sentence he was facing.

Because counsel is presumed competent, *see, e.g.*, *Strickland* at 690, a court would not be unreasonable in refusing to infer that this single statement proved counsel had no knowledge of Petitioner's maximum possible sentence. *Cf., e.g.*, *In re Alvernaz*, 2 Cal. 4th 924, 937 ("We caution that a defense attorney's simple misjudgment as to . . . the sentence that defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel."). This inference is further supported by the fact that counsel's calculation in her declaration was wholly consistent with her argument, reiterated during sentencing, that the imposition of consecutive sentences would be illegal under the Supreme Court's holding in *Cunningham v. California*. *See, e.g.*, Pet. Exh. A at 439-45. A competent trial counsel, making strategic decisions during the trial, would reasonably have been expected to remain consistent in her theory of the case. *Cf. Cullen*, 131 S. Ct. 1388, 1403.[5]

---

[5] Even if the Court did find Petitioner's argument persuasive, which it does not, under AEDPA the federal habeas court is not to "substitut[e] its own judgment for that of the state court." *Woodford*

Further, the Court could reasonably have inferred that Petitioner's counsel, who was clearly aware prior to trial that Petitioner was facing seventy years if convicted by a jury, *would have informed Petitioner of that fact*. This reasonable inference defeats Petitioner's claim that his counsel's performance prejudiced him – the second prong of analysis under *Strickland*. As counsel is presumed competent, the state court could reasonably have found that the pre-trial Burk Declaration meant that Petitioner also was aware of Burk's prediction that he was facing seventy years in prison. Also before the state court was Petitioner's statement at sentencing lauding Ms. Burk's performance as his attorney immediately after she stated that whether Petitioner was facing "64 years or 128 years [in prison], those are life sentences." *See* Pet. Exh. B at 2526-27. Read together, it is not unreasonable for the Court to have inferred that Ms. Burk likely had informed Plaintiff prior to trial that he was facing the "approximately seventy years" she had cited in her Declaration.

Petitioner stated clearly in his Petition that he would have accepted the plea agreement had he known he was facing a sentence of "even 48 years." Pet. at 11. The Burk Declaration, however, makes clear that before trial defense counsel knew that Petitioner was facing greater than this 48 years Petitioner says would have caused him to take the plea agreement instead of facing trial, and thus calls into question Mr. Colegrove's declaration stating that he was not advised that he was facing a potential sentence of more than 48 years. *See* Colegrove Decl., Pet. Exh. F at 40; *see also* Pet. at 11. Thus, this evidence strongly supports a state court finding that Petitioner was not prejudiced by his counsel's performance. The record shows that Petitioner's counsel knew he was facing more than 48 years in prison. It is reasonable for the state court to have inferred that Petitioner would have been informed of this fact prior to trial, as his counsel's declaration occurred prior to the beginning of trial. If the state court presumed that Petitioner knew he was facing 70 years, his own statement that he would have accepted a plea bargain had he known he

---

*v. Visciotti*, 123 S. Ct. 357, 360. Habeas relief is possible *only* if the state court's determination was abjectly unreasonable given the evidence presented. *See Harrington*, 131 S. Ct. 770, 784. This is a high bar, and one that Petitioner has not met. The state court could reasonably have been persuaded that Ms. Burk's statement in the motion to continue declaration was consistent with her theory of what punishment her client could likely receive, and not, as argued by Petitioner, indisputable evidence that she did not know what sentence he was facing.

14

1 was facing more than 48 years shows that he was not prejudiced by counsel's performance. *Cf.*
2 *Strickland*, 474 U.S. 668, 694 (holding that Petitioner must show that his counsel's deficient
3 performance was a "but for" cause of his harm, in this case not accepting the plea agreement).

4     Petitioner therefore fails to make a sufficient showing under either *Strickland* prong. The
5 single statement in the Burk Declaration in which counsel misstated the sentence Petitioner was
6 facing at trial does not show that counsel performed deficiently, and a state court making such a
7 determination is not abjectly unreasonable. *Cf. Harrington*, 131 S. Ct. 770, 784. Further, Petitioner
8 fails to show that his counsel's advice was the but-for cause of his harm, as a state court could
9 reasonably have inferred that he knew prior to trial that he was facing 70 years. This evidence runs
10 counter to his claim that he would have accepted the plea bargain had he known that he was facing
11 "even 48 years" at trial. Pet. at 11.

## IV. ORDER

Because the state court's denial of petitioner's habeas claim was not unreasonable under Supreme Court precedent, the Petition for Writ of Habeas Corpus is DENIED.

**IT IS SO ORDERED.**

Dated: January 21, 2015

BETH LABSON FREEMAN
United States District Judge